Good morning, Your Honors. May it please the Court, John Yang on behalf of the appellant. Before I begin, I'd like to reserve five minutes for rebuttal and I'll watch the clock. Okay. Your Honors, in this case, we are appealing because we agree with the federal magistrate judge that the California Supreme Court, in rejecting the sufficiency of the evidence claim that was raised by Petitioner in that court, did not do so unreasonably. So what's the theory on which the California Supreme Court reasonably, or could have reasonably, sustained the conviction? Because there was sufficient evidence to show that Petitioner did have the requisite intent, and the intent that we're talking about here— When I say theory, I mean tie it to the facts. What's the theory that he had the requisite intent to kidnap for extortion or whatever the law? Well, the facts show that the Petitioner and a cohort basically lured the victim out of the house and then began beating him while—and he fell to the ground and they continued to beat him. And thereafter— What were they trying to extort? They were trying to extort a computer, a computer that the Petitioner claimed was his. So is it your contention that the California Supreme Court could have reasonably sustained the conviction on the theory that Mr. Martin, the guy that got beat up, had the computer, or is it on the theory that he had information that would have led to the computer, or is it either-or? It's actually either-or. And he basically—if we attempt to match the elements to the facts of this case, and we actually presume in favor of the judgment as Jackson v. Virginia requires us to, basically we look at what happened. He said he beat the victim and then in the process he made a threat. The threat is, you bring me to the computer or I will kill you. And basically the gist of it is, you're going to turn over that computer sometime in the future or else we're going to kill you. And that threat basically is basically made so as to induce consent. And when I say consent, I put it in quotation marks because- It's not real consent. It's forced consent. Right. It's forced consent. But nonetheless, the California legislature says such consent is possible. And it actually, the statute contemplates that this type of consent is to be induced by force or fear. And California Decision on Law tries to explain this, that the consent within the statute, the extortion statute, California Penal Code 518, is unique. Okay. And it should be limited to that particular statutory definition. Can I ask, so why couldn't this have been charged as a kidnapping with intent to commit robbery? Why wasn't it charged that way? Well, Your Honor, it is arguable that it could be charged as a kidnapping for robbery. And what we're saying is it could be, even if it could be charged as either, there was nothing wrong with the prosecutor charging it to be kidnapping to commit extortion as long as there's sufficient evidence to support both. And in fact, there's nothing wrong with a given set of circumstances, one single criminal transaction involving one victim giving rise to multiple charges, which is precisely why California has this California Penal Code Section 654 preventing multiple punishment for multiple convictions based on one single transaction. I guess the district judge's point is that it got charged wrong, and so you have to evaluate it under how it was charged and how it could have been charged. But that would not be Jackson v. Virginia. We look at what it was charged, and we look at whether sufficient evidence sustained the charge. What was the theory that was argued by the prosecutor at the time of argument? The theory was basically that precisely what I'm arguing, Your Honor, basically that there was an intent to force the or coerce the victim to turn over the computer, either that or to take them to that place and then obtain the computer and then turn it over to them. There are various other theories, but the theory at play here is that particular theory that I'm expounding on. And then what we're saying – Is that the only theory that the jury could have relied upon? Your Honor, there was also another theory that I believe that the judge – the federal magistrate judge had taken notice of. But we believe that the most appropriate theory would be this particular theory, and the jury is presumed to rely on the most appropriate theory. And so that's what we are relying upon. And what we're saying is basically regardless of what went into the prosecutor's motivations – and we're not considering that the prosecutor engaged in any nefarious actions because the fact is, and we made this point in our brief, that kidnapping to commit extortion is in many ways the more appropriate charge to this case because of the fact – Is that what I'm just trying to get? Is it because he didn't have the computer on his person? Exactly. Is that the idea? Exactly, because the case that we cited, People v. Torres, talks about that difference between extortion and robbery. Robbery is you're taking some property that he has in his person or within his immediate possession, whereas extortion talks about turning over property at some future point in time. What if I conceive of the appropriate issue here as being the whereabouts of the computer? In other words, just some information that he has in his head. Does that always have to be charged as extortion? Because, I mean, he does have it on his person, I guess. The information? The information. Yes. And perhaps, perhaps it can be charged as robbery. I haven't thought about whether it can be charged as robbery, but it can be charged as extortion because if we consider that to be property and he's going to be turning it over sometime in the future, then it fits the definition. And really what we're grappling here is the overlap between the two charges, but nothing precludes, nothing precludes from two charges being based on a single factual circumstance. That's what we're saying. And so that shouldn't be part of their conclusion or part of the analysis in applying Jackson v. Virginia because Jackson v. Virginia is a straightforward application of the elements to the facts, and if it fits, there it is. And then in addition to that, we have an additional layer of deference that we rely upon, which is the AEDPA. And we want to defer to the California Supreme Court's rejection of this claim if it's reasonable. And if there's any theory to support it and reasonable jurors could agree to that theory, then no relief can be granted. And that's what our problem is with regard to the district court's finding in this case. It's engaging in too much analysis, overanalysis, when in fact the analysis is very simple. And perhaps at this point in time, unless Your Honors have any questions with regard to this issue that we're raising on appeal, I'd like to move our attention to the certificate claims that Petitioner is raising on their cross-appeal. The first issue is the ineffective assentism counsel, and that's divided into two parts, we see. The first part is the reasonableness of the defense counsel's decision to introduce evidence that the violent crime that was suffered by Shannon Wucker was in fact a killing. How could that ever be reasonable in terms of a strategy, to interject an uncharged and to that point excluded murder that the lawyer's client was supposedly implicated in? I just can't imagine any strategic reason why that would be a good idea. I understand where Your Honor is coming from. And in fact, the trial judge did express some concern about it, too, to the trial counsel. But ultimately, the trial judge apparently made a conclusion that it is within the realm of reasonableness. Otherwise, he would have excluded the evidence. He wouldn't have. And how can you jump to that conclusion? Right. The judge doesn't have any authority to say, counsel, I think this is such bad strategy that I'm just going to forbid you to even ask these questions. Right. But not even going there, Your Honor. What we're saying is the trial judge did have concerns. And in fact, we do understand that there are pitfalls to this strategy. But the fact is he made a tactical decision to try to challenge the credibility of an important witness by showing that he had this irremediable bias against him. But he had already been supposedly a victim of this kidnapping and beating. What more bias did the lawyer need to bring out? Well, the issue at hand was why did he delay the reporting? And the victim basically waited until the police officers interviewed him about the murder before he revealed it. And so counsel was basically saying that in addition, he basically had that motive, had that additional layer of motive to try to fabricate, to exaggerate, because he believed that this particular defendant had killed his niece. So as it actually went in, did the defense attorney actually get in? Did the jury get in front of it the proposition that the defendant had actually committed the murder of this other person? No. The defense attorney's attempt was not to show evidence that Petitioner, in fact, committed the murder. It was to show that this particular victim believed in his mind that Petitioner committed the murder. Even that didn't get in, did it? I mean, basically what happened is that the defense attorney put in that Ms. Walker, I think it was, was the victim of a violent crime, and he blamed him for that. Not that the victim of the kidnapping blamed Mr. Shakir for that. Not that, I mean, there wasn't any evidence put in that he actually killed her, right? No. No. No. But he did get out the fact that the victim knew. Knew. Knew. Yeah. And knew Petitioner was, you know, or believed, believed that the Petitioner actually killed Hannah Walker. And he did accomplish his purpose. But what we're saying is that all risks, all tactical reasons carry risks. And there's this presumption in Strickland which says we assume the reasonable is reasonable. On the flip side of that, just because it's a strategic decision doesn't mean it's automatically reasonable, right? That's right. And Watford's point is that this is such a boneheaded decision as how could it possibly be reasonable? We just rely on the fact that they are trying to try to challenge the credibility. But even if this Court were to find that it is unreasonable, we still believe that under Strickland's second prong that, and I see that my time is, if I can just finish the point real quickly. Yes, go ahead. Strickland's second prong really does not allow reversal because of the fact that we believe that the evidence is overwhelming showing the Petitioner's guilt. This was not only Martin Phillips' single testimony about what happened. In fact, his account of the kidnapping was substantially corroborated by a disinterested witness, a neighbor named Betty Lowe, who actually attested to the fact that they were beating a man who was lying on the ground in fetal position thereafter, forcibly shoving him into the car. So the testimony is amply corroborated, and we know that the evidence only shows one motive, to obtain the computer. And so we believe that the evidence is overwhelming. And therefore, if there was any effective assistance of counsel, there certainly was no reasonable probability of a different outcome had counsel not committed  Thank you, Your Honor. You have some time for rebuttal. Thank you. May it please the Court. I'm Julie Hall for Petitioner Jamal Shakir. Mr. Shakir stands convicted by an illusion. He may spend the rest of his life in prison based on a quirk and a paradox. No rational trier of fact could have found sufficient evidence for a conviction of kidnapping for extortion under these circumstances. Well, can I just direct you back to my theory as to why the jury could have? Because I want to hear your response. I view that Kozlowski case as being very similar factually to this set of facts. That's the one where they actually had the victims at gunpoint, demanded the ATM card, and then extracted from them the PIN code or whatever it was. And that just seems very similar to this. I view the property being extorted as information about the whereabouts of the computer. He obviously didn't have the computer on his person. Why doesn't that Kozlowski case suggest that there is a theory under which this would fit the crime of extortion exactly? I think in the first place, Your Honor, you don't get to the definition of when intangible property has value because there's just no specific intent to gain consent in this case. And so you never get that far to the intangible property. But if you did, the property in this case is different because the information about its location has no value. The PIN code actually has value. It's the lock that opens the key to the money. It has no value just in the abstract. It's probably a series of numbers. Right, and those numbers are the lock that opens the key to the money. So why isn't the information in his head the lock that opens the whereabouts of the laptop? The person who owns that PIN code owns that money, and therefore they have an exclusive interest in that property. So what if my friend also has the PIN code? So I don't have it exclusively anymore. Let's say it's the friend that gets kidnapped, and the kidnapper knows he's got my PIN code, and he says, okay, give me Kennelly's PIN code or I'm going to kill you. The information, though, would still be exclusive to you and your friend. Same here. It's exclusive to Mr. Martin and whoever has the laptop. Although it has a value to you because it grants you access to that money. You've clearly given your friend permission. I'm not sure why. You've given your friend permission to go into your bank account and access that money. In this case, Philip Martin has no right to that computer, to hold it, keep it, sell it, hide it, whatever it is. And so that computer's location has no intrinsic value to him. And it may be that a California court at some point would expand its definition of what intangible property has – which intangible property has value. I think the district court's point was they haven't. And so the district court could only deal with cases they have. But why should the district court take on the task of trying to interpret what the statute – That's actually what he – Or that the state court shouldn't interpret it any further, expand it any further. He was trying to avoid putting his own interpretation on the state court cases and saying they had identified these certain classes of property that have – intangible property that have intrinsic value. But Kozlowski says that the extortion statute, the definition of property, is supposed to be broadly interpreted. So why couldn't – why isn't it appropriate, given the deference that you have here under AEDPA, for the district court to say, well, okay, it's a broad definition of property. Maybe there is no case that's on all fours with this one, but it's reasonable. There still has to be something about that property or that information that gives it value to the person it's being extorted from. And there's nothing in this case that gives – I don't – as a theoretical matter, I don't understand why that would be true. It should – I can understand why it would need to have value to the person trying to do the extorting, but clearly it did. That's why he was – the man was being beaten, so that he would give up the whereabouts of the computer. When you look at the cases, Your Honors, there are cases, things like giving up a right to appeal, giving up – you know, giving up certain rights. They're all things – giving up the PIN number, the PIN code, they're all things that these people had that they had a right to, that they were – or information that they had a right to. Even the case the government cited, statistics that someone had put the blood, sweat and tears into compiling, those things weren't even necessarily secret or exclusive but they had value because these people had put the blood, sweat and tears into them. To Philip Martin, the location of that computer simply had no value. That's it. I hear you saying that, but I'm just – I don't understand why, from a criminal law standpoint, why should the law care whether the information has value to the person being extorted? That's – that's what California law says. It has to have – What case has said, in the context we've got, where the property had no value to the Under California law, that is not a crime. That – that's Kozlowski saying that it must have some intrinsic value. And so the extrinsic value of the location of that computer to Philip Martin just – there just wasn't any. Or at least none that he had a right to. Just shifting a little bit, what's wrong with the government's theory – with the state's theory? Under Jackson. On consent. First of all, the government's version of the facts, which the district court adopted, are that Philip Martin comes out of his house and wham. He's assaulted by two guys. They beat him up. They beat him up on the ground. They kick him. They force him into the car. There is never, never a single fact from which a jury could find beyond a reasonable doubt that Mr. Shakir intended to gain consent. This is absolutely without – And that – That's – I mean, they're trying to get his consent to take him to the computer. That's where – The fact that they may have beat him up right from the get-go, maybe that's just to make it clear to him that that's what they really intend to do. That's where you run into the problem, Your Honor, of there being no – of consent being an illusion. Because California law says his consent would be illusory. Well, then there's no difference between that and no consent. And if the punishment for the two crimes were the same, then I think that would be a workable theory. The problem is – and then there are additional problems in this case, one of which is the jury was given conflicting instructions on consent. They were under extortion. Of course, they were instructed that consent means – the consent has been induced by wrongful use of force or fear. On the other hand, they were also instructed that consent means acting freely and voluntarily and not under the influence of threats, force, or duress. So at the same time as there had to be force and fear, there couldn't be force or duress or threats to find consent. And so the jury had those two conflicting instructions in front of them. And then it got worse. In the prosecutor's argument, she was telling the jury why they could not convict Mr. Shakir of simple kidnapping, the lesser-included offense. Because she said, we have a kidnapping plus more. We have a kidnapping plus this aggravation, which is when you threaten somebody and you take them somewhere and you force them at gunpoint or anything else, force or fear, to go with you, there is a strong likelihood that somebody is going to get hurt, and that's kidnapping for the purposes of extortion. Never mentions consent. Doesn't tell them they have to find consent. Now, if we had, we know the prosecutor's argument isn't the law. If we had perfectly clear instructions that a jury could make sense of, that would be fine. But the problem here is that jury had no way of knowing what consent meant. They had, because even the California courts can't figure out what it means. Now, they've said, well, it means it's an issue of immediacy. So if the threat is right then, it's robbery. If the threat is sometime later, then it's extortion. But, in fact, the jury never heard anything about timing and immediacy and that being consent. And I sure don't know how a jury would sort that out for themselves with no guidance from the court to come up with, oh, consent, that's an issue of immediacy. It just doesn't make any sense. The final instruction that I think caused a real problem in this case that would not allow any specific intent to gain consent in this case is that the jury was instructed that the circumstances had to be consistent with the specific intent mental state and not be reconcilable with any other rational conclusion. So the instruction to the jury was they could only find consent, the mental state of consent, if there was no other rational conclusion. So this wasn't a case of the district court substituting its own rational conclusion for the juries. This was the jury being instructed to find that mental state. It can be the only rational mental state. And even under the state's argument, there were other, you know, maybe the mental state was consent, maybe it wasn't consent, they say it doesn't matter, California law says, and the instruction to the jury said it did matter. So there's simply no way they could have gotten to that conclusion. And I think the best example that this is still going on is the Curry case that the district court cited where the victim is assaulted, forced into a car, driven around, and told you better find a way to get us $700 or else. So the threat was made. It wasn't immediate. They were going to drive this person around until this person came up with the money. That defendant was convicted of kidnapping for robbery, and that conviction was upheld on appeal. There are more facts to indicate extortion and an attempt, a mental state to gain consent in that case than there are in Mr. Shakir's case. The fact is in California, the law is just so illusory. That element of that crime of extortion is so illusory. And I suspect there are cases where the facts would be so traditionally in line with consent that I can't argue that this element would be illusory in every single case, but I think it easily is illusory in this case. And the one case that California, the Peck case, the 1919 Peck case, talks about, I think this is the only attempt the courts have really made to say something clear about this illusory consent element, and that is that the court is looking for apparent willingness on the part of the victim, or the defendant is looking for apparent willingness. So if we could have stood on the sidewalk when Philip Martin was being beaten and forced into the car, and if we could sit in the car while Philip Martin was being driven around and still beaten in the car and beaten until he escapes and runs out of the car, was there ever any evidence in this case that Mr. Shakir's intent, we can say beyond a reasonable doubt to the exclusion of other rational conclusions, that Mr. Shakir's intent was he wanted Philip Martin to agree to appear to be willing to return that computer? Just as much as in Koslowski. But the victims are being held at gunpoint in the car. And the person says, give me the PIN number, and the victim does. I mean, that's not consent any more than it is in Mr. Martin's situation. And the court said that's extortion. Yeah. And in Curry, they said it's robbery. And that's exactly the problem, Your Honor, is as far as we can tell, it's random. But under Harrington v. Richter, we have to basically hypothesize any theory that the California Supreme Court could have come up with to affirm the conviction here. And it seems to me Koslowski points suggests that there is such a theory under California law. Except the specific facts in this case, Your Honor, there's never an attempt to gain willingness. There's never anything to say that Mr. Shakir intended, had that specific intent to gain consent. And it's only when you say, well, consent is illusory, and it doesn't really need to be there, that it – and that's the problem, then the element falls apart legally. Because essentially the California courts are essentially saying, don't worry about that element. Well, without that element, it's a simple kidnapping, which the district court agreed that that conviction could stand. So I'd like to ask you a couple questions about the ineffective assistance. I don't have to cut you off or anything. Relating to the notion of the defense lawyer putting in that Mr. Shakir was suspected of the murder of Shannon Walker, I think was the name, did that actually get in? It doesn't seem to me like it did, quite the way you say. It gets in in this way, Your Honor, that the jury is told Shannon Walker's a victim of a violent crime. Right. You blamed him for it. Shannon Walker is dead, so we know she's dead by a violent crime. And that comes in from the lawyer's own question. And that then the police come to see the family about that, and that Philip Martin, yes, holds Jamal Shakir responsible. So unless the jury is – But it's in this very oblique way. I mean, the question is, is based upon what you were told during that discussion with law enforcement, isn't it true that you developed a pretty serious bias against the defendant? And he basically says, yeah. And so, I mean, I understand that all of us now sitting back here after the fact, kind of massaging the record, can kind of figure out that's what was going on. I'm just sort of wondering whether that's the way it would have come into the jury. I think it had to, Your Honor, because jurors are smart, and they pay attention to the facts. They can't always figure out the law, but they're listening to the facts. And when they hear that Shannon Walker is dead, and that Philip Martin and his family hold Jamal Shakir responsible for her death by a violent crime, there's really only one conclusion the jury can come to, and that's some sort of homicide. But only that he blamed them for it, not that he actually did it. I mean, there wasn't any evidence put in, for example, that the police suspected him of doing it, that he had done it, they didn't call a witness to put on, you know, other act evidence or anything like that. So I don't think that's the way it would have come into the jury. And I think that's the way it would have come into the jury, which makes it even more damaging that it comes in by way of the defense lawyer, because then the jury thinks, well, obviously it's true, otherwise this defense lawyer would not only be not putting it on, he'd be objecting to it. But here it's the defense lawyer himself, Mr. Shakir's lawyer himself, telling us Shannon Walker basically is dead by violent crime and Jamal Shakir is responsible. Your time's almost up. By the way, did you include all the jury instructions that were given? The transcript includes my recollection. Are they part of the excerpts of records? Yes. They're actually in the first excerpts of records that the Respondents filed. Thank you. With the time remaining, I'd like to add one more point regarding the ineffective assistance of counsel claim, and that is that first part of the claim analyzing the reasonableness of counsel's tactical decision to introduce evidence about the killing or that the victim believed that there was a killing. We believe that that wasn't raised at the district court level specifically. For the district court to make an analysis as to whether that tactical decision was reasonable. It wasn't raised in the district court. Therefore, there wasn't any discussion in the report and recommendation or in the district court opinion. And it wasn't even raised in the California Supreme Court. So we believe that we have a waiver argument that we need to assert. But they did raise it in the objections to the report and recommendation, right? They raised it in the, I believe, I think at the point where they asked for a certificate of appealability. And so I believe, but even if. I think in the objections that the Petitioner filed to the report and recommendation, the Petitioner argued that the report, that the magistrate judge had ignored the primary thrust of the claim, that an introduction of evidence of Shannon Walker's murder was ineffective. And then he made a bunch of the same arguments they made here. And, I mean, you didn't, the Respondent didn't object to the objections saying that this is too late, did you? No, we didn't. But it would appear to me that when you raise an argument, you would have to raise it prior to any. Maybe it depends on whether it was something about the particular twist or the particular spin, if you will, that the magistrate judge put on it. Maybe it wasn't an argument that even was apparent before until you get the magistrate judge's ruling. Right. It wasn't even an argument that was apparent. That's precisely the case. To the lawyer, in other words. In other words, the magistrate judge says something, and it's like, wait a second, there's something wrong with that. I'm objecting to it. Sure. He could have come back at that point and said, or whoever was handling the case could have come back and said, no, this argument's too late. You never made it before. But that didn't happen. There wasn't any response to the objections to the R&R. There wouldn't be any reason, really, to at that point. Usually, we don't. Say you waive the argument. It would be a pretty good reason to respond to objections. Right. What we're saying is the proper place to raise the argument would be at the initial point. And certainly it wasn't raised in the California Supreme Court either. And so we believe that if it wasn't raised in the California Supreme Court, then 2254B would preclude habeas relief based on that particular claim. Your time is up. Okay. Thank you, Your Honor. Thank you. Thank you. We appreciate counsel's argument on both sides. And Shakir Almeida is submitted at this time.
judges: Kennelly, Paez, Watford